STAUDENMAYER *v.* CITY TRANSIT COMPANY.

5-729                                      283 S. W. 2d 121

Opinion delivered October 24, 1955.

*L. V. Rhine* and *John C. Watkins,* for appellant.

*Frierson, Cherry, Walker & Snellgrove,* for appellee.

PAUL WARD, Associate Justice.   The City Transit Company, owner of a garage in Jonesboro, secured a jury verdict against June Staudenmayer [and her guardian, Lelia B. Staudenmayer] in the amount of $585.05, for negligently driving, or causing to be driven, an automobile through its garage door, damaging said building and some of the contents thereof.   The specific allegation of negligence was:

''The collision and the resulting damage were the direct and proximate result of the negligence of the defendant in becoming drunk and engaging in a drunken party with the unknown person occupying the car with her and in driving and permitting her car to be driven in such a condition and in failing to keep her car under control or to cause the driver to keep it under control and in driving off the street and across plaintiff's lot

and into its building without controlling or stopping the car.''

The answer was a general denial.

The principal question on appeal is one of law and it arises over an instruction given by the trial judge. There is practically no dispute about the pertinent facts.

June Staudenmayer is a young lady afflicted periodically with epileptic spells, but at other times she is perfectly normal. Because of this condition her mother was appointed her guardian in 1946. On the night of February 8, 1952, or the early morning of the 9th, June, who lived with her mother at Leachville, secured the keys to her mother's car, without her mother's consent, and drove the car to Monette. There she picked up two men who were strangers to her. She says one of the men drove the car while she sat between him and the other man. It appears likely June was under the influence of liquor at this time or, as she says, under the influence of medicine she had taken. She says that she remembers driving towards Jonesboro but remembers nothing else until after the accident.

An employee of the Transit Company was on duty at the garage early on the morning of February 9th when he heard the car crash through the swinging doors used by busses. He made an immediate investigation and found June sitting in the car but he did not see anyone else around the car or leaving the building. It was his opinion that June was drunk or doped. A patrolman who appeared on the scene in about five minutes did not see either of the strange men around the car or leaving the building but he did see June in the middle of the front seat. He stated she was in her pajamas and intoxicated and that she was charged with public drunkenness. It is admitted that the car belonged to June's mother and appellants do not question the extent of the damages.

At the conclusion of plaintiff's testimony appellant moved for a directed verdict on the ground that it was

not shown that June Staudenmayer owned the car or that she was driving the car at the time of the accident. The trial court denied this motion and we think correctly so. Some of the reasons for this conclusion will be set out later but it suffices to note at this time that there was evidence from which the jury might have found that June was driving the car at the time of the accident. This being true a jury question was presented and therefore the court correctly overruled the motion.

The principal ground urged by appellants for a reversal is the alleged error in appellee's Instruction No. 3 given by the court to the jury. This instruction reads:

"If you find from a preponderance of the evidence in this case that the defendant, June Staudenmayer, individually, drove or caused to be driven by another, the automobile in which she was riding in a negligent manner, and that as a proximate result of the negligent driving of the said automobile the property of the plaintiff was damaged, your verdict should be in favor of the plaintiff against the defendant, Lelia B. Staudenmayer, as guardian of the defendant, June Staudenmayer, and unless you do so find your verdict will be for the defendant."

We understand that appellants admit, first, that under the facts in this case appellee is entitled to a judgment if June Staudenmayer had been a normal, sane person, and second, that appellee would likewise be entitled to judgment even though June was an incompetent person if she had been driving the car. Therefore we assume that appellants' main objection to the instruction set out above is to that portion which allowed appellee to recover if the jury should find that June "caused the car to be driven by another." It is strongly argued that June, being adjudged an incompetent person, could not be liable in this case, if she was not actually driving the car, except on the theory that she appointed one of the strangers to drive for her as her agent. It is then argued that she had no such capacity under the law citing, among others, the following authorities: *George v. St.*

452

*Louis I. M. & S. Ry. Co.,* 34 Ark. 613; *First National Bank of Rogers* v. *Tribble,* 155 Ark. 264, 244 S. W. 33; *Reams* v. *Taylor,* 31 Utah 288, 87 Pac. 1089; *Thompson* v. *Bell,* 6 Cir., 129 Fed. 2d 211, and; Restatement of the Law of Agency, Vol. 1, Sec. 20. We have read all of the authorities cited by appellants and agree that they hold, in general, that an insane person is incapable of appointing an agent. In the *George* case, supra, appellant sought to void a release he had signed to a Railway Company on the ground that he was insane at the time he signed it. It was held that this was a question of fact for the jury to determine from the testimony. In the *Tribble* case, supra, the court made the same announcement when appellee, who had been adjudged incompetent, defended against an action for borrowed money on the ground that he was incompetent. In the *Thompson* case, supra, it was held that an incompetent person could not enter the relationship of a joint enterprise which rested upon the principle of agency.

It is our view that none of the authorities cited by appellants are decisive of or pertinent to the case under consideration. As we see it the facts in this case do not raise the question as to whether an insane person can appoint an agent. There is no substantial evidence in this record to show that June Staudenmayer was insane or incompetent during any time related to this episode. It is admitted of course that her mother was appointed her guardian in 1946 because she was subject to epileptic seizures but all of the testimony including her own shows that at all times when not so seized she was the same as any other normal intelligent person. Appellants made no attempt to show, and there is no testimony to show, that June was affected by a seizure when she left her mother's home, when she picked up the strangers or when the accident occurred. There is testimony that she might have been doped or drunk but she cannot escape liability here by bringing these conditions or either of them upon herself.

Appellants did not ask, and we think correctly, for an instruction which would have permitted the jury to pass on June's mental capacity at the time involved here. Under this situation appellants are in no position to object to the court's instruction set forth above.

The view which we have taken of this case makes it unnecessary for us to consider other questions which were raised and discussed, such as the following: Can an insane or incompetent person be held for damages done by an automobile which he owns and in which he is riding but which is driven by another person; and is it material whether the incompetent person actually owns the car at the time or has it in his lawful possession.

Finding no error, the judgment of the lower court is affirmed.